# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DAVID WELLS, | |
| Plaintiff, | Case No.: 2:21-cv-02040-GMN-NJK |
| vs. | **ORDER**[1] |
| GLOBAL TECH INDUSTRIES, *et al.*, | |
| Defendants. | |

Pending before the Court is Defendant Liberty Stock Transfer's ("Liberty") Motion to Strike or Objection to, (ECF No. 78), Plaintiff David Well's Proposed Judgment, (ECF No. 76). Plaintiff filed a Response, (ECF No. 81), to which Liberty filed a Reply, (ECF No. 82).

Also pending before the Court is Liberty's Motion to Deposit Funds, (ECF No. 80). Plaintiff filed a Response, (ECF No. 81), to which Liberty filed a Reply, (ECF No. 83).

Also before the Court is Defendant Global Tech Industries, Inc.'s ("Global Tech") Response, (ECF No. 86), to the Court's Order to Show Cause, (ECF No. 84).

For the reasons discussed below, the Court DENIES Liberty's Motion to Strike or Objection to Plaintiff's Proposed Judgment to the extent it seeks to strike Plaintiff's Proposed Judgment but SUSTAINS its Objection to the Proposed Judgment. The Court also GRANTS in part Liberty's Motion to Deposit Funds, and ORDERS Global Tech to file a motion to reopen discovery, motion seeking relief from the Court's Scheduling Order, or other motion contesting its liability by December 5, 2023.

---

[1] Given the unnecessarily aggressive tone throughout its filings, Liberty's attorneys are directed to review Local Rule ("LR") 1-1(c). *See* LR 1-1(c) ("The court expects a high degree of professionalism and civility from attorneys. There should be no difference between an attorney's professional conduct when appearing before the court and when engaged outside it, whether in discovery or any other phase of a case.").

## I. BACKGROUND

This case arises from Liberty's failure and Global Tech's alleged failure to register and transfer Plaintiff's shares of stock. Formerly known as Tree Top Industries, Inc., Global Tech is a corporation organized under the laws of the State of Nevada, with a registered address in Las Vegas, Nevada. (Compl. ¶ 2, ECF No. 1). Liberty is the current stock transfer agent of Global Tech. (*Id.* ¶ 3). Plaintiff is a financial consultant who performed services for Global Tech in 2012. (*Id.* ¶ 8). Plaintiff received 1,500,000 fully paid and non-assessable shares of Global Tech common stock as partial payment for prior services rendered. (*Id.*).

On November 11, 2021, Plaintiff filed a Complaint against Liberty and Global Tech in this Court, asserting that they violated the Duty to Register Transfer of Shares under NRS § 104.8401. (*Id.* ¶¶ 21–26). The following month, Plaintiff filed a Motion for Clerk's Entry of Default, (ECF No. 13), attesting he properly executed service on Global Tech, and that despite being served, Global Tech failed to answer or otherwise respond to his Complaint. (*Id.*). In January 2021, the Clerk of Court subsequently entered a Clerk's Entry of Default. (ECF No. 19). That same month, Global Tech filed a Motion to Vacate the Clerk's Entry of Default. (Mot. Vacate Clerk's Entry Default, ECF No. 19).

On March 8, 2022, the Court entered a Scheduling Order setting a discovery plan and dispositive motion deadline for the parties. (Scheduling Order, ECF No. 30). The Court specified its Scheduling Order applied to Global Tech because Global Tech's counsel appeared in this case. (*Id.* 1:13–28). But despite this explicit language, Global Tech failed to participate in discovery. (Resp. Order Show Cause 2:22–24, ECF No. 86)

Liberty and Plaintiff completed discovery before filing cross-motions for summary judgment in August 2022. (ECF Nos. 52, 55). The next month, the Court granted Global Tech's Motion to Vacate the Clerk's Entry of Default. (Order Vacating Clerk's Entry Default, ECF No. 68). Global Tech then filed an Answer to Plaintiff's Complaint in October 2022,

(ECF No. 69), but has since taken no other action. Five months later the Court granted Plaintiff's Motion for Summary Judgment and denied Liberty's Motion for Summary Judgment. (Order Granting Mot. Summ. J. ("MSJ"), ECF No. 75). Because of Global Tech's absence, the Court's Order was limited to finding that Liberty improperly failed to register and transfer Plaintiff's shares of stock. The Court's Order "awarded $39,576.00 in damages for [Liberty's] wrongful refusal to register transfer of shares" and awarded Plaintiff "pre-judgment interest and post-judgment interest at the rate set by the United States Department of Treasury." (*Id.* 23:2–6). The Court's Order did not address whether Plaintiff was entitled to attorneys' fees and costs. (*See generally Id.*).

Plaintiff then submitted a Proposed Judgment which included that judgment be entered in favor of Plaintiff against Global Tech and Liberty "jointly and severally" and that Plaintiff be awarded "$39,576.00, plus prejudgment interest in the amount of $8,514.15[.]" (Proposed J. 2:1–6, ECF No. 76). Plaintiff's Proposed Judgement further awarded him reasonable attorneys' fees and costs. (*Id.* 2:6–8). Liberty then filed a Motion to Strike or Objection to, Plaintiff's Proposed Judgment, (ECF No. 78), arguing that it was both procedurally and substantively improper. Liberty further filed a Motion to Deposit Funds, seeking to deposit $41,177.81—a total compromised of the $39,576.00 in damages awarded by the Court plus the $1,601.81 in pre- and post-judgment interest Liberty maintains Plaintiff is entitled—with the Court. (Mot. Deposit Funds 5:1–17, ECF No. 80).

Global Tech submitted no filing despite Plaintiff's Proposed Judgment addressing its liability. Global Tech's inaction led the Court to issue an Order to Show Cause, requiring it to explain "whether it plans to contest this action and why judgment should not be entered against it." (Order Show Cause 2:7–10, ECF No. 84). Global Tech subsequently filed a Response, explaining that it "had not been able to actively participate or engage in discovery." (Resp. Order Show Cause 2:22–24, ECF No. 86). Global Tech further averred that judgment should

not be entered against it because all relief sought against it by Plaintiff may be tendered by Liberty, and thus, Plaintiff's cause of action is essentially mooted. (*Id.* 3:8–18).  Global Tech stated it may amend its answer to include "Accord and Satisfaction as an affirmative defense" and file a "motion to dismiss" on this basis. (*Id.*).  The Court addresses Liberty's Motions and Global Tech's Response to the Court's Order to Show Cause below.

## II. LEGAL STANDARD

There are two sources of authority federal courts access when striking a pleading. *Jones v. Skolnik*, No. 3:10-cv-00162-, 2015 WL 685228, at *2 (D. Nev. Feb. 18, 2015).  Under Rule 12(f) "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  However, Rule 12(f) motions are generally disfavored unless the matter to be struck has no possible bearing on the subject matter of the existing litigation and its inclusion will prejudice the defendants. *Novva Ausrustung Group, Inc. v. Kajioka*, No. 2:17-cv-01293, 2017 WL 2990850, at *2 (D. Nev. July 13, 2017) (internal citation omitted).  Here, Plaintiff's Proposed Judgment is directly related to the resolution of this proceeding.  Therefore, the Court declines to strike Plaintiff's Proposed Judgment on this basis.

Irrespective of Rule 12(f), the Court may strike an improper filing under its "inherent power over the administration of its business." *Jones*, 2015 WL 685228, at *2 (internal citation omitted).  Motions to strike under inherent powers are wholly discretionary. *Almy v. Davis*, No. 2:12-cv-00129, 2014 WL 773813, at **4–5 (D. Nev. Feb. 25, 2014).

## III. DISCUSSION

**A. Motion to Strike or Objection to Plaintiff's Proposed Judgment, (ECF No. 78)**

Liberty argues Plaintiff's Proposed Judgment should be stricken or rejected for several reasons.  As relevant here, the Court examines Liberty's arguments that the Proposed Judgment should be stricken or rejected because it incorrectly calculated the pre-judgment interest Plaintiff is entitled and improperly included attorneys' fees. (Mot. Strike 5:15–6:21).  The

Court begins with Liberty's pre-judgment interest arguments.

### 1. Pre-Judgment Interest Calculation

Liberty argues Plaintiff's interest pre-judgment calculation is incorrect for two reasons. First, Liberty avers Plaintiff's calculation improperly relies "not on the damages awarded by this Court, but on the original damages he demanded." (Reply 7:11–12, ECF No. 82). According to Liberty, Plaintiff's pre-judgment interest should be calculated using the $39,576.00 he was awarded, and not the $187,500.00 Plaintiff originally requested. (*Id.* 7:18–8:12). Second, Liberty maintains Plaintiff erred in in his calculation because he utilized an interest rate which contravenes the language of 28 U.S.C. § 1961. Each argument will be examined in turn.

#### *a. Amount Used in Calculating Plaintiff's Pre-Judgment Interest*

As stated, Liberty maintains the Court should calculate Plaintiff's pre-judgment interest on the $39,576.00 he was awarded. (Reply 7:18–8:12). But for the reasons below, the Court rejects this argument because it misconstrues the purpose of pre-judgment interest.

A brief background is helpful to understanding Plaintiff's damages award and its relevancy to the Court's pre-judgment interest finding. The Court found that on September 16, 2021, Plaintiff would have received $187,500.00 for the shares underlying this dispute but for Liberty's improper refusal to register and transfer his shares. (Order Granting MSJ 21:20–25). Because of Liberty's conduct, Plaintiff was left to mitigate his damages during the pendency of this lawsuit as Liberty distributed some of his shares. Plaintiff ultimately sold these shares for $147,924.00. (*Id.*). Thus, the Court found that by "subtracting Plaintiff's mitigated damages from the total, [he] is entitled to $39,576.00 in damages[.]" (*Id.*).

The issue with Liberty's argument is that the ultimate damages award a plaintiff receives does not remedy the period a plaintiff was deprived the use and value of their money because of the defendant's conduct. Pre-judgment interest "is a measure that 'serves to compensate for the

loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.'" *Schneider v. Cnty. of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002) (quoting *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987)). Put differently, the "purpose of prejudgment interest is to compensate the injured party, making the plaintiff whole 'for the accrual of wealth which could have been produced during the period of loss.'" *Western Air Charter, Inc. v. Schembari*, No. 17-cv-420, 2019 WL 6998789, at *3 (C.D. Cal. Mar. 7, 2019) (quotation omitted).

Plaintiff was deprived of the use and value of the total amount of his shares throughout the entirety of this action. *See HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 15-cv-00865, 2019 WL 4295285, at *2 (C.D. Cal. Sept. 9, 2019) ("Class members were deprived of the use and value of their money in the nearly four years since they were damaged by the fraud, and the award of prejudgment interest will right that wrong.") (citing *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 717 (9th Cir. 2004); *see also Hiles v. Progressive Relocation Sys. Inc.*, No. 20-cv-01984, 2021 WL 3046902, at *4 (D. Ariz. July 20, 2021) ("Pre-judgment interest is part of the full actual loss suffered by Plaintiffs and an award of pre-judgment interest is necessary to make Plaintiffs whole."). On September 16, 2021, Plaintiff was not deprived the use and value of $39,576.00; he was divested of $187,500.00, or the total value of his shares. It is the opportunity to accrue further wealth on this sum that Plaintiff was dropped, and that pre-judgment interest will remedy. And as this case progressed, this amount gradually decreased as Plaintiff mitigated his damages.

The Court is mindful that pre-judgment interest is an element of compensation, "not a penalty" to impose on defendants. *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013). But the Court will also not penalize Plaintiff for mitigating his damages. Therefore, Plaintiff is entitled to pre-judgment interest on the value of the amount in shares he had on each day

throughout this litigation.  The parties are directed to review the Interest Calculation Chart attached as Exhibit 1 to Plaintiff's Response, (ECF No. 81-1), which shows the amount and value of the shares Plaintiff had throughout this litigation.

### b. Interest Rate Used in Calculation[2]

Second, Liberty maintains Plaintiff erred in his calculation by utilizing an interest rate which failed to adhere to 28 U.S.C. § 1961. (Mot. Strike 6:13–21).  Plaintiff's Response explains he utilized a 5.03% interest rate, which was the average maturity yield set by the Board of Governors of the Federal Reserve System for the week prior to the Court's Order granting him summary judgment. (Resp. 6:3–16).

Under 28 U.S.C. § 1961, "interest shall be calculated . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding" the date of judgment. 28 U.S.C. § 1961(a).

Here, Plaintiff utilized an interest rate based on the average maturity yield for the week preceding the Court's summary judgment Order.  But the interest rate that would reasonably compensate Plaintiff is the average fifty-two (52) week Treasury bill rate spanning up to the calendar week preceding the date of judgment. *See Estate of Feikes v. Cardiovascular Surgery Assocs. Profit Sharing Plan, Trust*, No. 2:04-cv-1724, 2017 WL 3396510, at *4 (D. Nev. Aug. 4, 2017) (finding that the pre-judgment interest rate that would reasonably compensate the plaintiff was the average "52-week Treasury bill rate immediately prior to the commencement of that year").  And because this case has spanned multiple years, the proper rate must be adjusted based on the year-end Treasury bill rate for each year. *See Seward Prop., LLC v.*

---

[2] The Court notes that the difference between Plaintiff and Liberty's pre- and post-judgment calculations amounts to $6,912.34. (Reply 5:23–25, ECF No. 83).  This is not a small sum of money, but when accounting for the amount the parties have spent and will spend on attorneys' fees in litigating this dispute, the Court can only question whether the parties are effectively utilizing their and the Court's time and resources.

*Arctic Wolf Marine, Inc.*, No. 3:18-cv-00078, 2022 WL 17414964, at *6 (D. Alaska Dec. 5, 2022) ("Seward Property is awarded prejudgment interest on the $52,000 judgment previously awarded, in the amount of $1,170.42, calculated for the 545 days from January 19, 2021 to the date of the amended judgment, July 18, 2022, using the 2021 year-end Treasury bill rate of 0.37% for the interest accruing in 2021 and the Treasury bill rate from the calendar week before July 18, 2022 of 3.11% for the interest accruing in 2022."); *see also Erler v. Erler*, No. 2:12-cv-02793, 2018 WL 4773414, at *3 (N.D. Cal. Apr. 11, 2018) (explaining how to calculate pre-judgment interest accruing over a multi-year period), *adopted,* No. 2:12-cv-02793, 2018 WL 3421911 (N.D. Cal. July 16, 2018).

In sum, the Court disagrees with Plaintiff's pre-judgment interest calculation. But this disagreement, standing alone, is an insufficient reason to strike Plaintiff's Proposed Judgment under its inherent powers. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion."). Accordingly, the Court will SUSTAIN Liberty's Objection to Plaintiff's Proposed Judgment but DENIES Liberty's Motion to Strike Plaintiff's Proposed Judgment. The Court will give the parties until December 5, 2023, to provide the Court with an interest calculation consistent with this Order. In an abundance of caution and to avoid future unnecessary motion practice, the Court will also address Liberty's remaining argument regarding attorneys' fees.

### 2. Attorneys' Fees

Liberty argues that Plaintiff's Proposed Judgment impermissibly included a "blank space . . . for the Court to award him attorneys' fees and costs without filing a motion, without specifying the basis for an entitlement to attorneys' fees, and without requesting any particular amount from the Court." (Reply 5:3–8). Moreover, Liberty contends the "extraordinary remedy of attorneys' fees" is not warranted because the Court did not address attorneys' fees and costs in its summary judgment Order. (*Id.* 5:15–16).

Liberty is correct that the Court's summary judgment Order did not address attorneys' fees and costs. But the mere absence of language in a court's summary judgment order explicitly awarding attorneys' fees and costs or providing Plaintiff with leave to file such a motion does not categorically preclude such relief. *See Andreaccio v. Weaver*, No. 2:22-cv-00672, 2023 WL 5305462, at *1 (D. Nev. Aug. 15, 2023). Nevertheless, to minimize any additional unnecessary future motion practice, the Court will give Plaintiff leave to file a motion for attorneys' fees and costs which articulates the basis for such an award once judgment is entered. *See Sundance Media Grp., LLC v. Yuneec USA, Inc.*, No. 2:18-cv-00388, 2021 WL 619744, at *3 (D. Nev. Feb. 17, 2021) ("[N]ontaxable expenses are recoverable on a motion to the court, as part of the motion for fees.") (citing Fed. R. Civ. P. 54(d)(2) ("Claim for attorney's fees and related nontaxable expenses")); *see also* LR 54-14(b)(2) (detailing that a motion for attorney's fees must include "[a]n itemization of all costs sought to be charged as part of the fee award and not otherwise taxable pursuant to LR 54-1 through 54-13.").

**B. Motion to Deposit Funds, (ECF No. 80)**

As stated, Liberty seeks to deposit $41,177.81 with the Court, comprising the $39,576.00 in damages Plaintiff was awarded and the $1,601.81 in pre- and post-judgment interest Liberty believes Plaintiff is entitled. Considering the above, the Court disagrees with Liberty's pre- and post-judgment interest calculation because it relied exclusively on $39,576.00 Plaintiff was awarded and fails to account for the accrual of wealth Plaintiff could have produced but for Liberty's conduct. Accordingly, the Court will GRANT in part Liberty's Motion to Deposit Funds. Liberty may deposit $39,576.00 with the Court because those damages are final. However, the Court DENIES Liberty's Motion to the extent it seeks to deposit the pre- and post-judgment interest it submitted.

**C. Global Tech's Response to the Court's Order to Show Cause, (ECF No. 84)**

Finally, the Court notes Global Tech explained in its Response to the Court's Order to

Show Cause that it may amend its answer to "include Accord and Satisfaction as an affirmative defense, and a motion to dismiss on this basis appropriate as all relief sought against [Global Tech] will have been tendered to Plaintiff by [Liberty]." (Resp. Order Show Cause 3:13–18). It is Global Tech's prerogative to raise this argument, but it is warned that the Court finds this argument neither novel nor creative. Instead, the underlying legal and factual assertions lack a reasonable underpinning and could be considered sanctionable conduct.

The pivotal issue is whether Global Tech is "jointly and severally" liable with Liberty. Pursuant to this theory of liability, "[w]hen persons cause a single and indivisible harm where there is no reasonable basis for division according to the contribution of each, however, they are held liable jointly and severally for the entire harm." *State of Ariz. v. Motorola, Inc.*, 805 F. Supp. 749, 752 (D. Ariz. 1992) (citing *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 n. 8 (1979)).  Thus, if Global Tech is jointly and severally liable for preventing Plaintiff from registering and transferring his shares, it is irrelevant if Liberty paid the entire judgment.  Global Tech is equally liable for the offending conduct.  This reasoning applies even if the Court opts not to award Plaintiff attorneys' fees.

Global Tech is advised that it must act to prevent judgment being entered against it.  It failed to provide any meaningful opposition to the legal issue regarding its liability in its Response to the Court's Order to Show Cause.  The Court will give Global Tech until December 5, 2023, to file a motion to reopen discovery, motion seeking relief from the Court's Scheduling Order, or other motion contesting its liability.  If Global Tech opts to only file a motion contesting its liability, the Court will address its motion contesting liability and if it is denied, will enter judgment against Global Tech.  Failure to file a motion by this deadline will also result in the Court entering judgment against Global Tech.  The Court will not continue to delay the timely resolution of this case merely because of Global Tech's failure to act.

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Liberty's Motion to Strike or Objection to Plaintiff's Proposed Judgment, (ECF No. 78), is **SUSTAINED** to the extent it raises an objection, and **DENIED** to the extent it seeks strike Plaintiff's Proposed Judgment. **IT IS FURTHER ORDERED** that the parties have until December 5, 2023, to provide the Court with an interest calculation consistent with this Order.

**IT IS FURTHER ORDERED** that Liberty's Motion to Deposit, (ECF No. 80), is **GRANTED in part.** The Clerk of Court is instructed to accept a check in the amount of $39,576.00 in this matter.

**IT IS FURTHER ORDERED** that Global Tech has until December 5, 2023, to file a motion to reopen discovery, motion seeking relief from the Court's Scheduling Order, other motion contesting its liability. Failure to file such a motion will result in the Court entering judgment against it.

**DATED** this __25__ day of October, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT